IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) No. 06 CR 219 |
| REX BLACK, | ) |
| | ) |
| Defendant. | ) |
| | ) |

OPINION AND ORDER
RESOLVING CERTAIN ISSUES RELATING
TO DEFENDANT'S SENTENCING GUIDELINES RANGE

JAMES F. HOLDERMAN, District Judge:

Defendant Rex Eugene Black ("Black") stands convicted of five federal felonies arising from his fraudulent criminal conduct in this case. He faces a maximum term of imprisonment of one hundred and three years. Black was once a resident and landowner in Will County, Illinois. He held titles to a farm located at 32500 South Center Line Road ("Farm") near Manteno and a home located at 2852 West Eagle Lake Road in Beecher ("Beecher Home"). He also owned other property that was held in trust for him and his wife in what was called Eagle Nest Limited Trust.

Unlike most Americans, Black did not pay his taxes. His recalcitrance about paying his taxes intensified in 2001 when the IRS assessed Black and his wife $3.89 million in taxes, penalties and interest for the years 1997 and 1998. Following that assessment, Black still did not pay. When the government placed liens on his property, Black's recalcitrance escalated from his crime of willful failure to pay his taxes to much more serious and egregious criminal conduct. That more serious criminal conduct is the conduct of which Black stands convicted in this case, Black's knowingly and corruptly submitting false, fraudulent, and fictitious financial documents

to the IRS on multiple occasions during 2002 and 2003 to obstruct and impede the IRS in its lawful collection of the taxes, penalties and interest.

## I. Background Facts

When Black was indicted (Dkt. No. 1) ("Indictment") in March 2006, he had already left the country. He then lived beyond the reach of the United States government in Mexico for several years. In 2012, he was apprehended in Texas and was returned to this district to face the charges in the Indictment. He was convicted on May 9, 2013 by a jury of all counts in the Indictment. (Dkt. No. 129, (Final Verdict Form, under seal to protect jurors' signatures); Dkt. No. 176-1, (public copy of Final Verdict Form, with jurors signatures redacted.))

The scenario leading to Black's conviction of the crimes in the Indictment began in 2000 when the IRS conducted an audit of Black's income and wealth for the years 1997 and 1998.[1] The IRS, as a result of that audit, determined that Black and his wife owed the federal government approximately $3,890,000 in income taxes, penalties and interest. Black did not cooperate with the IRS during that audit nor did Black pay the money he owed the government. The debt that Black owes the government has continued to grow over time with the addition of interest and penalties resulting from Black's criminal conduct of which Black was convicted – submitting fraudulent, false and fictitious financial documents to obstruct and impede the IRS.

Back in October 2002, due to Black's continuing non-payment of his debt to the government, the IRS began filing liens on Black's property with the Will County, Illinois Recorder of Deeds to assist in the government's collection of the money Black owed. In response, Black engaged in his series of serious fraudulent felony criminal acts. Over a period of

---

[1] Although the government has sought in its version of the offense to discuss Black's earlier involvement with Michael Richmond and the selling of abusive tax shelters, the court has only focused on the criminal conduct of which Black has now been convicted beyond a reasonable doubt. Although the government argued the point, the government did not present sufficient evidence in this case of Black's earlier conduct, and the jury made no determination thereon for sentencing enhancement purposes.

ten months, Black submitted on multiple occasions fraudulent, false and fictitious financial documents to the IRS to impede and obstruct its lawful collection efforts. Each time Black submitted one of his several fraudulent documents, his criminal object and intent was to deceive and defraud the government the face amount of that phony document which Black fraudulently purported was payment of money Black owed the government. The trial jury unanimously found Black guilty because the evidence established beyond a reasonable doubt that Black knowingly and corruptly obstructed and impeded the IRS (Dkt. No. 129; 176-1). Black committed these crimes not only to further his intentional evasion of the taxes Black owed, but also to thwart the government's collection of the penalties and interest obligations Black owed to the government.

Each of Black's multiple phony payment documents was admitted in evidence at the trial of the case. Black's purported payments using his fraudulent, false and fictitious documents collectively totaled more than $14,000,000.

## II. Facts Supporting Black's Conviction of Multiple Criminal Acts

Black's multiple criminal acts of which the jury found him guilty beyond a reasonable doubt were charged in the Indictment as a violation of 26 U.S.C. 7212(a) in Count One, which carries a maximum prison term of three years, and violations of 18 U.S.C. 514(a) in Counts Two through Four, each of which carries a maximum prison term of twenty-five years. Black's guilt was established by the following facts:

On October 4, 2002, the IRS filed a lien in the amount of $4,856,895.49 against Black's property and property rights. On October 22, 2002, Black responded to this lien with criminal conduct, as the jury unanimously found, in that Black knowingly and corruptly obstructed the due administration of the internal revenue laws and the IRS's lawful function to collect income taxes, penalties, interest and fines, when he submitted to the IRS a fraudulent and false document

3

in the form of a check, number 1535, drawn on a closed account at Harris Bank in the amount of the lien — $4,856,895.49 (G. Ex. 18A).

On October 29, 2002, the IRS notified Black that he had a further outstanding debt to the government of an additional $505,993.68 in penalties and interest. Black responded again with criminal conduct in that he knowingly and corruptly obstructed the due administration of the IRS's lawful collection functions, when Black, on November 8, 2002, submitted to the IRS another fraudulent and false document, check number 1537, drawn on that same closed Harris Bank account in the amount the IRS sought from Black — $505,993.68 (G. Ex. 20A).

On November 7, 2002, the IRS filed two liens on Black's property, the first in the amount of $1,467,168.33 on Black's Beecher Home and the second in the amount of $1,417,804.18 on Black's ownership interest in the Eagle Nest Limited Trust. Black responded to both liens by knowingly and corruptly obstructing the IRS's lawful collection of taxes, penalties and interest, in that Black submitted to the IRS two false and fraudulent documents in the form of checks, both drawn on a closed account at Fleet Bank, both dated April 22, 2003, and both payable to the Department of Treasury in purported payment of the respective liens on Black's Beecher Home and Black's Eagle Nest Limited Trust: check number 111 in the amount of $1,467,168.33 (G. Ex. 24) and check number 112 in the amount of $1,417,804.18 (G. Ex. 25A).

On July 10, 2003, Black again knowingly and corruptly further obstructed the IRS's lawful monetary collection efforts by submitting to the IRS a fictitious financial document dated July 10, 2003, Registered Bill of Exchange number 4406, payable to the IRS and falsely purporting to pay again the amount of the lien on Black's Beecher Home — $1,467,168.33 (G. Ex. 26A).

On July 29, 2003, the IRS filed another lien on Black's Farm, this time in the amount of $4,954,049.40. Black's response again was to knowingly and corruptly obstruct the IRS's collection efforts when Black submitted to the IRS in a purported full payment to extinguish that lien, a fictitious financial document dated August 14, 2003, Registered Bill of Exchange number 4437, payable to the United States Treasury in the amount of $4,954,049.40 (G. Ex. 29A).

While Black was engaged in the above-described crimes to knowingly and corruptly obstruct and impede the IRS, Black, on July 13, 2003, with the intent to defraud the Clerk of the Court of the Northern District of Illinois, submitted a false and fictitious financial document in the form of a Registered Bill of Exchange, number 4428 to pay a fine imposed by the United States District Court in the amount of $326,000 (G. Ex. 27A).

Each time Black submitted one of his phony payment documents, he intended to defraud the government the particular amount of money on that bogus instrument. Had Black been successful in his entire scheme to obstruct, impede and defraud the government, the government would have lost the monetary amount of the aggregate total of all Black's phony documents submitted to the government, more than $14 million.

### III.  Sentencing Guidelines Calculation Issues

The court will now address certain issues regarding Black's sentencing for his crimes.

A.   Grouping of Counts

Because Black was convicted of each of the multiple counts charged in the Indictment, the court must evaluate which, if any, of those counts should be grouped for the purposes of applying the United States Sentencing Guidelines ("USSG").

1. Counts One, Two, Four and Five Should Be Grouped as Group 1

The above facts describe Black's crimes as charged in Count One, which charged Black with a violation of 26 U.S.C. 7212(a), and in Counts Two, Four and Five, which each charged Black with a violation of 18 U.S.C. 514(a). These four counts should be grouped for guideline calculation purposes, not only because the IRS was Black's intended victim of each crime, but also because Black's fraudulent criminal conduct against the IRS was ongoing and continuous. The applicable offense guideline USSG § 2T1.1 was written to cover such behavior, and Black's offense level resulting from his intended fraud on the IRS under USSG § 2T1.1 is determined on the basis of Black's intended amount of monetary loss to the IRS that was the object of Black's criminal conduct.

Black's criminal conduct as charged in Counts One, Two, Four, and Five is specifically covered by the "Special Instructions" in USSG § 2T1.1(c)(1) relating to tax offenses involving fraudulent or false documents, statements and tax evasion. That USSG section, USSG § 2T1.1(c)(1), advises that in this case, "the tax loss is the total amount of loss that was the object of [Black's] offense (i.e., the loss [to the IRS] that would have resulted had [Black's] offense been successfully completed."

The loss Black intended the IRS to suffer had Black's offense been successfully completed included the loss of the penalties and interest Black owed the IRS, as well as the taxes he owed. Consequently, under the facts proven at trial, as well as the applicable law, the specific amounts of money on the face of Black's false, fictitious and fraudulent financial documents were the object of Black's crimes and constitute the bases for Black's convictions of his Group 1

offenses. Those amounts aggregated are the USSG § 2T4.1 Tax Table "tax loss" resulting from Black's Group 1 offenses as defined under USSG § 2T1.1(c)(1).[2]

USSG § 3D1.2(d) specifically states that the offenses covered by USSG § 2T1.1 are to be grouped under USSG § 3D1.2(d), which states:

> When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

As stated earlier in this opinion, had Black been successful in his crimes, the government would have lost the total monetary amount Black placed on the bogus documents that were the object of Black's Group 1 crimes in the aggregate, over $14 million.

The USSG grouping provision, USSG § 3D1.3(b), states in pertinent part:

> (b) In the case of counts grouped together pursuant to § 3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the <u>aggregated quantity</u>, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level. (emphasis added.)

The "Commentary" to USSG § 3D1.3, Application Note 3 further explains in pertinent part:

> When counts are grouped pursuant to § 3D1.2(d), the offense guideline applicable to the <u>aggregate behavior</u> is used. If the counts in the Group are

---

[2]The court recognizes that the first two sentences of Application Note 1, to USSG § 2T1.1 advises:

> 1. **Tax Loss.**—"Tax loss" is defined in subsection (c). The tax loss does not include interest or penalties, except in willful evasion of payment cases under 26 U.S.C. 7201 and willful failure to pay cases under 26 U.S.C. 7203.

Even though Black's criminal statute of conviction was 26 U.S.C. 7212(a), not 26 U.S.C. 7201 or 7203, the evidence at the trial established beyond a reasonable doubt that the object of Black's criminal conduct in committing the offenses in Counts One, Two, Four and Five was to defraud the IRS by willfully failing to pay and willfully evading his payment of his debt obligations to the IRS, which included the penalties and interest, as well as the taxes that Black owed to the IRS.

covered by different guidelines, use the guideline that produces the highest offense level. . . . (emphasis added).

Black's highest offense level is determined on the basis of the total amount of intended loss caused by Black's Group 1 criminal offense behavior. Black's Group 1 crimes started in October 2002 and continued into August 2003 during which Black submitted six different fraudulent, false, and fictitious documents to the IRS purporting to pay off Black's debt obligations and extinguish the liens the IRS had placed on Black's property.

    2. Count Three Should Be Group 2

Count Three, though alleging a violation of 18 U.S.C. 514(a), is not a part of the same scheme in which Black criminally engaged that forms the basis of Black's Group 1 crimes. Although the crime alleged in Count Three took place during the same time period as Black's Group 1 crimes, Black's intended victim of Count Three was the "Clerk of Court, Northern District of Illinois," not the IRS. Moreover, Count Three falls into none of the subsections of USSG § 3D1.2 for USSG-grouping purposes. Count Three is, therefore, a separate group unto itself, Group 2.

B.    Determining the Offense Level Applicable to Each Group

    1. Group 1 (Counts One, Two, Four and Five)

The base offense level of Group 1 is derived from the USSG § 2T4.1, Tax Table and is appropriately calculated according to the "tax loss" as defined in the USSG 2T1.1(c) relating to Black's continuous and fraudulent criminal conduct encompassed by Black's Group 1 crimes.

The USSG § 2T1.1(c)(1) "tax loss" definition applies to Black's Group 1 crimes, which involved Black's submission to the IRS of "fraudulent or false return, statement, or other documents. Appropriately the USSG § 2T1.1(c)(1) results in a "tax loss" figure for Black's fraud crimes is greater than the "tax loss" definition found in USSG § 2T2.1 for the less serious

crime of "Non-payment of Taxes." Non-payment of taxes is the uncharged criminal conduct in which Black had engaged in 2001, before he willfully commenced his crime spree in October 2002, when he started submitting his series of phony documents to the IRS to willfully evade payment by obstructing and impeding the IRS in its lawful collection of the taxes, penalties and interest Black owed.

Applying the "Special Instructions" that specify the "tax loss" figure in USSG § 2T4.1 Tax Table for Black's Group 1 crimes to be: (1) the total amount of loss that was Black's Group 1 criminal object, or (2) the loss that would have resulted to the government had Black's Group 1 criminal conduct been successfully completed, the appropriate amount that fits each criteria is the more than $14 million total of the fraudulent, false and fictitious financial documents that Black submitted to carry out Black's Group 1 crimes to corruptly obstruct and impede the IRS in its collection of taxes, penalties and interest, as charged in the Indictment (Dkt. No. 1) and as found by the jury (Dkt. No. 129; 176-1). The total of Black's Group 1 intended criminal conduct that was Black's Group 1 intended criminal object and the loss the IRS would have suffered had Black's Group 1 criminal conduct been successful, is properly calculated based upon the jury's findings at Black's trial as follows:

| (a) G. Ex. 18 A | 10/22/02 | Harris Bank check #1535 | $4,856,895.49 |
|---|---|---|---|
| (b) G. Ex. 20A | 11/8/02 | Harris Bank check #1537 | $ 505,993.68 |
| (c) G. Ex. 24 | 4/22/03 | Fleet Bank check #111 | $1,467,168.33 |
| (d) G. Ex. 25A | 4/22/03 | Fleet Bank check #112 | $1,417,804.18 |
| (e) G. Ex. 26A | 7/10/03 | Registered Bill of Exchange #4406 | $1,467,168.33 |
| (f) G. Ex. 29A | 8/14/03 | Registered Bill of Exchange #4437 | $4,954,049.40 |
| **TOTAL** | | | **$14,669,079.41** |

Under USSG § 2T4.1 Tax Table subsection K, "more than $7,000,000," the base offense level for Black's Group 1 criminal conduct (Counts One, Two Four and Five) is level 26.

9

Black argues on pages 1 and 2 of his Reply Memorandum (Dkt. No. 168) that the 2000 IRS audit "ignored seemingly legitimate deductions that most businesses take… and engaged in double-counting of income…," the result of which "was to greatly exaggerate the amount of income attributable to Black in 1997 and 1998…." Even if that were the case in 2000, which became irrelevant due to Black's later crimes of conviction, Black's lawful recourse in 2000 was to follow the appropriate procedures allowed by the law to contest and appeal the IRS's audit determination. Black did not do so. Instead, Black chose to engage in the criminal acts of fraud and obstruction of which he now stands convicted. Black waived his right to now assert previously unclaimed, unapplied deductions. See, e.g., United States v. Chavin, 361 F.3d, 666, 677-78 (7th Cir. 2002). The 2013 amendment to USSG § 2T1.1 instructs the court to account for any unclaimed credit, deduction, or exemption, but only to the extent that "(A) the credit, deduction, or exemption was related to the tax offense," and (B) "is reasonably and practically ascertainable at the time of sentencing." (USSG § 2T1.1's Commentary, Application Note 3, page 315.) Black's purported deductions, however, are unrelated to the tax offenses of which the jury found Black guilty — obstructing the IRS through Black's bogus checks and fictitious financial instruments. Moreover, the probably accuracy of Black's purported deductions are not ascertainable now in 2013 at the time of Black's sentencing, because Black did not cooperate with the IRS's audit in 2000 (Dkt. Nos. 129; 176-1). See United States v. Hassebrock, 663 F.3d 906, 923 (7th Cir. 2011) (rejecting defendant's purported deductions post-conviction unreliable because defendant failed to file a tax return or other supporting documents).

In the Seventh Circuit, "Amount of loss must be determined 'on the basis of the conduct of conviction and relevant conduct.'" United States v. Schroeder, 536 F.3d 746, 752 (7th Cir. 2008), quoting United States v. Firth, 461 F.3d 914, 917 (7th Cir. 2006). Black in his Group 1

crimes intended the IRS to suffer the loss equal to the aggregate amount on the phony documents Black submitted to the IRS from October 2002 through August 2003 to obstruct and impede the IRS's collection efforts which, as the court has explained above, is $14,669,079.41, the aggregate of Black's intentionally fraudulent and obstructionist crimes of which the jury found Black guilty beyond a reasonable doubt. (Dkt. No. 129; 176-1).

    2. Group 2 (Count Three)

Because Black's Group 2 criminal conduct is not tax related, the proper USSG table applicable to Count Three is USSG § 2B1.1(a)(1), for Black's Group 2 criminal conduct. That table results in a base offense level of 7. Because Black's intended loss to Black's Count Three victim, the "Clerk of Court, Northern District of Illinois," was the amount of $326,000 (G. Ex. 27A), the base offense level must have 12 additional levels added to it, pursuant to USSG 2B1.1(b)(1)(G). This makes Black's Group 2 (Count Three) total offense level 19.

C. Multiple Count Unit Calculation to Arrive at Combined Adjusted Offense Level

Under USSG § 3D1.4, the combined offense level calculation for Black's Group 1 and Group 2 offenses is as follows:

| Group # | Adjusted Offense Level | Units |
|---|---|---|
| 1 | 26 | 1.0 |
| 2 | 19 | .5 |
| **Total Number of Units** | | 1.5 |

Under USSG § 3D1.4, the multiple count combined adjustment is, therefore:

    Greater Group's Adjusted Offense Level    26
    Increase in Offense Level (USSG § 3D1.4)    +1

    Black's Combined Adjusted Offense Level    27

Black has not accepted responsibility for his crimes. The court finds that Black's guidelines should include no other adjustments. The court does not, at this time, intend to depart from the calculated USSG range in imposing sentence.

## Conclusion

For the reasons stated in this opinion and order, Black's Combined Adjusted Offense Level is 27, and he is within a Criminal History Category of I. Consequently, the 2013 USSG Manual's Sentencing Table provides Black a sentencing range of 70 to 87 months. The court will consider the factors set forth in 18 U.S.C 3553, the arguments of counsel, Black's statement in allocution, should he desire to present one, and any other pertinent factors to determine the appropriate sentence in this case.

ENTER:

_____
JAMES F. HOLDERMAN
United States District Judge

Date: November 27, 2013